

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA



| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIVIL ACTION NO. *05-1351* |
| v. | ) |
| | ) |
| PARKER HANNIFIN CORPORATION | ) |
| and | ) |
| CENTRAL SPRINKLER CORPORATION | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

CONSENT DECREE WITH PARKER HANNIFIN CORPORATION

i

# TABLE OF CONTENTS

I.       BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 1

II.      JURISDICTION . . . . . . . . . . . . . . . . . . . . . . 5

III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . . . 5

IV.      DEFINITIONS . . . . . . . . . . . . . . . . . . . . . 6

V.        GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . 15

VI.      PERFORMANCE OF THE WORK BY SETTLING DEFENDANT . . . . 18

VII.    REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . 34

VIII.   QUALITY ASSURANCE, SAMPLING, and DATA ANALYSIS . . . . 37

IX.      ACCESS . . . . . . . . . . . . . . . . . . . . . . . 41

X.        REPORTING REQUIREMENTS . . . . . . . . . . . . . . . 48

XI.      EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . 52

XII.    PROJECT COORDINATORS . . . . . . . . . . . . . . . . 55

XIII.   ASSURANCE OF ABILITY TO COMPLETE WORK . . . . . . . 57

XIV.    CERTIFICATION OF COMPLETION . . . . . . . . . . . . 60

XV.      EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . 65

XVI.    PAYMENT OF RESPONSE COSTS . . . . . . . . . . . . . 67

XVII.   INDEMNIFICATION AND INSURANCE . . . . . . . . . . . 71

XVIII. FORCE MAJEURE . . . . . . . . . . . . . . . . . . . 75

XIX.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . 78

XX.      STIPULATED PENALTIES . . . . . . . . . . . . . . . . 84

XXI.    COVENANTS NOT TO SUE BY PLAINTIFF . . . . . . . . . 90

XXII.   COVENANTS BY SETTLING DEFENDANT . . . . . . . . . . 93

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . 97

ii

XXIV.    ACCESS TO INFORMATION . . . . . . . . . . . . . . . .   99

XXV.     RETENTION OF RECORDS  . . . . . . . . . . . . . . . .  101

XXVI.    NOTICES AND SUBMISSIONS  . . . . . . . . . . . . . .  103

XXVII.   EFFECTIVE DATE  . . . . . . . . . . . . . . . . . . .  105

XXVIII.  RETENTION OF JURISDICTION . . . . . . . . . . . . . .  105

XXIX.    APPENDICES  . . . . . . . . . . . . . . . . . . . . .  105

XXX.     COMMUNITY RELATIONS  . . . . . . . . . . . . . . . . .  106

XXXI.    MODIFICATION . . . . . . . . . . . . . . . . . . . . .  106

XXXII.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT  . . . . . .  107

XXXIII.  SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . .  108

XXXIV.   FINAL JUDGMENT  . . . . . . . . . . . . . . . . . . .  109

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>Parker Hannifin, Inc.<br><br>Defendant. | )<br>)<br>)<br>)<br>)  CIVIL ACTION NO.<br>)<br>)<br>)<br>)<br>)<br>) |

CONSENT DECREE

## I.  BACKGROUND

A.  The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.  The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the North Penn Area 6 Superfund Site in Lansdale Borough, Montgomery County, Pennsylvania, ("Site") together with accrued interest; and (2) performance of studies and response work by the defendant at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

- 2 -

C.   In accordance with the NCP and Section 121(f)(1)(F)
of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the
Commonwealth of Pennsylvania (the "State") on April 21, 2000
of negotiations with potentially responsible parties regarding
the implementation of the remedial design and remedial action
for the Site, and EPA has provided the State with an
opportunity to participate in such negotiations and be a party
to this Consent Decree.

D.   In accordance with Section 122(j)(1) of CERCLA, 42
U.S.C. § 9622(j)(1), EPA notified the Department of the
Interior, the National Oceanic and Atmospheric Administration,
and the Pennsylvania Department of Environmental Protection on
November 1, 2000 of negotiations with potentially responsible
parties regarding the release of hazardous substances that may
have resulted in injury to the natural resources under Federal
trusteeship and encouraged the trustee(s) to participate in
the negotiation of this Consent Decree.

E.   The Defendant that has entered into this Consent Decree
("Settling Defendant") does not admit any liability to the
Plaintiff arising out of the transactions or occurrences
alleged in the complaint, nor does it acknowledge that the
release or threatened release of hazardous substance(s) at or
from the Site constitutes an imminent or substantial

- 3 -

endangerment to the public health or welfare or the
environment.

F.   Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605,
EPA placed the Site on the National Priorities List, set forth
at 40 C.F.R. Part 300, Appendix B, by publication in the
Federal Register on March 31, 1989, 54 Fed. Reg. 13296.

G.   In response to a release or a substantial threat of a
release of a hazardous substance(s) at or from the Site, EPA
commenced on September 28, 1993, a Remedial Investigation and
Feasibility Study ("RI/FS") for Operable Unit 3 for the Site
pursuant to 40 C.F.R. § 300.430.

H.   EPA completed a Remedial Investigation ("RI") Report
and a Feasibility Study ("FS") Report in August 1999.

I.   Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617,
EPA published notice of the completion of the FS and of the
proposed plan for remedial action on December 9, 1999, in a
major local newspaper of general circulation.  EPA provided an
opportunity for written and oral comments from the public on
the proposed plan for remedial action.  A copy of the
transcript of the public meeting is available to the public as
part of the administrative record upon which the Regional
Administrator based the selection of the response action.

- 4 -

J.   The decision by EPA on the remedial action to be
implemented as Operable Unit 3 ("OU3") for the Site is
embodied in a final Record of Decision ("ROD"), executed on
August 10, 2000, on which the State has given its concurrence.
The ROD includes a responsiveness summary to the public
comments.  Notice of the final plan was published in
accordance with Section 117(b) of CERCLA.

K.   Based on the information presently available to EPA,
EPA believes that the Work will be properly and promptly
conducted by the Settling Defendant if conducted in accordance
with the requirements of this Consent Decree and its
appendices.

L.   Solely for the purposes of Section 113(j) of CERCLA,
the Remedial Action selected by the ROD and the Work to be
performed by the Settling Defendant shall constitute a
response action taken or ordered by the President.

M.   The Parties recognize, and the Court by entering this
Consent Decree finds, that this Consent Decree has been
negotiated by the Parties in good faith and implementation of
this Consent Decree will expedite the cleanup of the Site and
will avoid prolonged and complicated litigation between the
Parties, and that this Consent Decree is fair, reasonable, and
in the public interest.

- 5 -

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.   **JURISDICTION**

1.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendant.  Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District.  Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.   **PARTIES BOUND**

2.   This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors and assigns.  Any change in ownership or corporate status of Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.   Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as

- 6 -

defined below) required by this Consent Decree and to each
person representing Settling Defendant with respect to the
Site or the Work and shall condition all contracts entered
into hereunder upon performance of the Work in conformity with
the terms of this Consent Decree.  Settling Defendant or its
contractors shall provide written notice of the Consent Decree
to all subcontractors hired to perform any portion of the Work
required by this Consent Decree.  Settling Defendant shall
nonetheless be responsible for ensuring that its contractors
and subcontractors perform the Work contemplated herein in
accordance with this Consent Decree.  With regard to the
activities undertaken pursuant to this Consent Decree, each
contractor and subcontractor shall be deemed to be in a
contractual relationship with the Settling Defendant within
the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C.
§ 9607(b)(3).

## IV.  **DEFINITIONS**

4.  Unless otherwise expressly provided herein, terms used
in this Consent Decree which are defined in CERCLA or in
regulations promulgated under CERCLA shall have the meaning
assigned to them in CERCLA or in such regulations.  Whenever
terms listed below are used in this Consent Decree or in the

- 7 -

appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 et seq.

"Companion Consent Decrees" shall mean all those Consent Decrees, other than this Consent Decree, entered into to perform the OU3 Remedial Design/Remedial Action at the North Penn Area 6 Superfund Site.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Duly Authorized Representative" shall mean a person set forth or designated in accordance with the procedures set forth in 40 C.F.R. § 270.11(b).

- 8 -

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"PADEP" shall mean the Pennsylvania Department of Environmental Protection and any successor departments or agencies of the State.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States  incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections VII, IX (including, but not limited to, attorneys fees and any monies paid to secure access and/or to secure institutional controls, including the amount of just compensation), XV, and Paragraph 84 of Section XXI.

"Interest" shall mean interest at the rate specified for interest on investments of the Hazardous Substance Superfund established under Subchapter A of Chapter 98 of Title 26 of the U.S. Code, compounded on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).

- 9 -

"Municipal Solid Waste" shall mean all waste materials generated by households, including single and multi-family residences, and hotels and motels.  The term also includes waste materials generated by commercial, institutional, and industrial sources, to the extent such wastes (A) are essentially the same as waste normally generated by households, or (B) are collected and disposed of with other municipal solid waste or sewage sludge as part of normal municipal solid waste collection services and, regardless of when generated, would be considered conditionally exempt small quantity generator waste under regulations issued pursuant to Section 3001(d)(4) of the Solid Waste Disposal Act (42 U.S.C. 6921(d)(4)).  Examples of Municipal Solid Waste include food and yard waste, paper, clothing, appliances, consumer product packaging, disposable diapers, office supplies, cosmetics, glass and metal food containers, elementary or secondary school science laboratory waste, and household hazardous waste.  The term does not include combustion ash generated by resource recovery facilities or municipal incinerators, or waste from manufacturing or processing (including pollution control) operations not essentially the same as waste normally generated by households.

- 10 -

"National Contingency Plan" or "NCP" shall mean the
National Oil and Hazardous Substances Pollution Contingency
Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C.
§ 9605, codified at 40 C.F.R. Part 300, and any amendments
thereto.

"Operable Unit 3" or "OU3" shall mean the response actions
relating to the ground water contamination addressed by the
Record of Decision for the Site signed on August 10, 2000, by
the Regional Administrator, EPA Region III, or his/her
delegate, and all attachments thereto.  The ROD is attached as
Appendix A.

"Operation and Maintenance" or "O & M" shall mean all
activities required to maintain the effectiveness of the
Remedial Action as required under the Operation and
Maintenance Plan approved or developed by EPA pursuant to this
Consent Decree.

"Oversight Costs" shall mean, for purposes of this Consent
Decree only, that portion of Future Response Costs incurred by
EPA in monitoring and supervising the Settling Defendant's
performance of the Work to determine whether such performance
is consistent with the requirements of this Consent Decree,
including costs incurred in reviewing plans, reports and other
documents submitted pursuant to this Consent Decree, as well

- 11 -

as costs incurred in overseeing implementation of the Work;
however, Oversight Costs do not include, <u>inter alia</u>:  (1) the
costs of direct action by EPA to investigate, evaluate or
monitor a release, threat of release, or a danger posed by
such release or threat of release; (2) the costs of litigation
or other enforcement activities; (3) the costs of determining
the need for or taking direct response actions by EPA to
conduct a removal or remedial action at the Site, including
but not limited to, the cost of activities by EPA pursuant to
Sections VII (Remedy Review); and XV (Emergency Response) of
this Consent Decree; (4) the cost of undertaking the five-year
review set forth in Section VII (Remedy Review) or otherwise
determining whether or to what extent the Work has reduced the
release or threat of release at the Site; (5) the cost of
enforcing the terms of this Consent Decree, including all
costs incurred in connection with Dispute Resolution pursuant
to Section XIX (Dispute Resolution); (6) the cost of securing
access under Section IX (Access); and (7) the cost of work
performed under Section VI (Performance of Work by Settling
Defendant), Paragraph 10-16 of this Consent Decree.

"Owner, Operator, or Lessee of Residential Property" shall
mean a person who owns, operates, manages, or leases
Residential Property and who uses or allows the use of the

- 12 -

Residential Property exclusively for residential purposes.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site through lodging of this Consent Decree, plus Interest on all such costs which has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the cleanup standards and other measures of achievement set forth in the ROD attached hereto as Appendix A (such other measures of achievement shall include those derived from any Technical Impracticability evaluation conducted as provided in Section IX of the ROD) and those that are developed by the Settling Defendant and approved by EPA during Remedial Design.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Operable Unit 3 at the Site signed on

- 13 -

August 10,2000,  by the Regional Administrator, EPA Region III, or his/her delegate, and all attachments thereto.   The ROD is attached as Appendix A.

"Remedial Action" shall mean those activities, except for Remedial Design and Operation and Maintenance, to be undertaken by the Settling Defendant to implement the ROD, in accordance with the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed  pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendant to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Residential Property" shall mean single or multi-family residences, including accessory land, buildings, or improvements incidental to such dwellings, which are exclusively for residential use.

- 14 -

"Section" shall mean a portion of this Consent Decree identified by a roman numeral.

"Settling Defendant" shall mean Parker Hannifin, Inc.

"Sewage Sludge" means solid, semisolid, or liquid residue removed during the treatment of municipal waste water, domestic sewage, or other waste water at or by publicly owned or federally owned treatment works.

"Site" shall mean the North Penn Area 6 Superfund Site, encompassing approximately 1000 acres, located in Lansdale Borough, Montgomery County, Commonwealth of Pennsylvania and depicted in the ROD.

"Small Business" shall mean any business entity that employs no more than 100 individuals and is a "small business concern" as defined under the Small Business Act (15 U.S.C. §§ 631 et seq.).

"Small Nonprofit Organization" shall mean any organization that does not distribute any part of its income or profit to its members, directors, or officers, employs no more than 100 paid individuals at the involved chapter, office, or department, and was recognized as a nonprofit organization under Section 501(c)(3) of the Internal Revenue Code of 1986.

"State" shall mean the Commonwealth of Pennsylvania.

- 15 -

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); and (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, except those required by Section XXV (Retention of Records).

## V. **GENERAL PROVISIONS**

5. Objectives of the Parties

The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendant, to reimburse Future Response Costs of the Plaintiff (excluding Oversight Costs), and to resolve the claims of Plaintiff against Settling Defendant as provided in this Consent Decree.

- 16 -

6.  Commitments by Settling Defendant

      a.  Settling Defendant shall finance and perform the
Work as specified in Section VI of this Consent Decree.
Settling Defendant shall also reimburse the United States for
Future Response Costs (excluding Oversight Costs) as provided
in this Consent Decree.

      b.  Settling Defendant's obligations to perform and
finance work required by the ROD and this Consent Decree are
as follows:

      i)   with regard to connecting affected residences to
public water supplies (where affected residences are those
having wells that are used for drinking water and that are
contaminated at a level above the maximum contamination
level): obligations of Settling Defendant and the signatories
to the Companion Consent Decrees are joint and several;

      ii)  with regard to all other Work:

      (a) Settling Defendant's obligations are several
but not joint with any other signatories to the Companion
Consent Decrees;

      (b) Settling Defendant shall not liable for any
activities performed by or to be performed by any of the
signatories to the Companion Consent Decrees; and

- 17 -

(c) In the event one or more of the signatories to the Companion Consent Decrees become insolvent or otherwise fail to perform any of the work, Settling Defendant shall not assume liability for or be obligated to perform the work of that signatory to the Companion Consent Decrees.

c.  In the event that Settling Defendant files for bankruptcy or is placed involuntarily in bankruptcy proceedings, Settling Defendant shall notify the United States within three (3) days of such filing.

7.  <u>Compliance With Applicable Law</u>

All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.  <u>Permits</u>

a.  As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (<u>i.e.</u>,

- 18 -

within the areal extent of contamination or in very close
proximity to the contamination and necessary for
implementation of the Work).  Where any portion of the Work
that is not on-site requires a federal or state permit or
approval, Settling Defendant shall submit timely and complete
applications and take all other actions necessary to obtain
all such permits or approvals.

b.   The Settling Defendant may seek relief under the
provisions of Section XVIII (Force Majeure) of this Consent
Decree for any delay in the performance of the Work resulting
from a failure to obtain, or a delay in obtaining, any permit
required for the Work.

9.   This Consent Decree is not, and shall not be
construed to be, a permit issued pursuant to any federal,
state or local statute, regulation, or ordinance.

## VI.  PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

10.   Selection of Contractors.

a.   Supervising Contractor.

i.   All aspects of the Work to be performed
by Settling Defendant pursuant to Sections VI (Performance of
the Work by Settling Defendant), VII (Remedy Review), VIII
(Quality Assurance, Sampling, and Data Analysis), and XV
(Emergency Response) of this Consent Decree shall be under the

- 19 -

direction and supervision of the Supervising Contractor, the selection of which shall be subject to acceptance or disapproval by EPA after a reasonable opportunity for review and comment by the State. Within twenty-one (21) days after the lodging of this Consent Decree, Settling Defendant shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. EPA will issue a notice of disapproval or acceptance of the selection of such Supervising Contractor. If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to EPA and the State and must obtain a notice of acceptance of such change from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

ii.   If EPA disapproves the selection of a proposed Supervising Contractor, EPA will notify Settling Defendant in writing. Settling Defendant shall submit to EPA and the State a list of at least two contractors, including the qualifications of each contractor, that would be acceptable to them within thirty (30) days of receipt of EPA's notice. EPA will provide written notice of the names of any

- 20 -

contractor(s) whose selection it would accept.  Settling
Defendant may select any contractor from that list and shall
notify EPA and the State of the name of the contractor
selected within twenty-one (21) days of EPA's written notice.

iii.  If EPA fails to provide written
notice of its acceptance or disapproval as provided in this
Paragraph and this failure prevents the Settling Defendant
from meeting one or more deadlines in a plan approved by the
EPA pursuant to this Consent Decree, Settling Defendant may
seek relief under the provisions of Section XVIII (Force
Majeure) of this Consent Decree.

b.   Other Contractors and Subcontractors.

i.   The Settling Defendant shall submit to EPA
and the State for acceptance by EPA the names and
qualifications of any additional contractors and
subcontractors they propose to use to satisfy any requirement
of this Consent Decree before such contractor or subcontractor
performs any Work.  If EPA does not respond with a notice
accepting or disapproving the proposal for additional
contractors and subcontractors within fourteen (14) days of
receipt by EPA of Settling Defendant's selections, the
proposal for additional contractors and subcontractors shall
be deemed accepted.  In the event EPA disapproves any proposed

contractor or subcontractor, Settling Defendant shall submit
to EPA and the State a list of at least two contractors or
subcontractors, including the qualifications of each, that
would be acceptable to them within twenty (21) days of receipt
of EPA's notice.  EPA will provide written notice of the names
of any contractor(s) or subcontractor(s) whose selection it
would accept.  Settling Defendant may select any contractor or
subcontractor from that list and shall notify EPA and the
State of the name of the contractor or subcontractor selected
within ten (10) days of EPA's written notice.

     11.  Remedial Design/Remedial Action.

        a.  Within 30 days after EPA's acceptance of the
selection of the Supervising Contractor pursuant to Paragraph
10, Settling Defendant shall submit to EPA and the State a
work plan for the design of the Remedial Action at the Site
("Remedial Design Work Plan" or "RD Work Plan").  The RD Work
Plan shall be prepared by the individual(s) and/or entities
responsible for completion of the Remedial Design, except to
the extent such persons have been disapproved by EPA.  The
Remedial Design Work Plan shall provide for design of the
remedy set forth in the ROD, except that the Remedial design
Work Plan shall be strictly limited to response actions that
are necessary within the boundaries of the Source Location as

- 22 -

defined in Appendix C and not elsewhere within the Site.   The Remedial Design Work Plan shall also provide for achievement of the Performance Standards within the area of the Source Location that is specified in Appendix C and not elsewhere within the Site.   The Remedial Design Work Plan shall further provide for other requirements set forth in the ROD and this Consent Decree that pertain to (1) the connection of residences to public water as required by the ROD, or (2) other requirements that directly relate to or can be satisfied or given effect through response actions in or on the Source Location.   Except for the connection of residences to public water as required by the ROD, no activities outside the boundary of the Source Location shall be required of Settling Defendant.   Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree.   The Settling Defendant shall also submit to EPA and the State, at the time the Remedial Design Work plan is submitted, a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

     b.   The Remedial Design Work Plan shall include plans, schedules, and methodologies for implementation of all

- 23 -

remedial design and pre-design tasks and shall include, at a
minimum:

     1.    a Site Management Plan;

     2.    a Sampling and Analysis Plan, containing:

         a.    a Field Sampling Plan; and

         b.    a Quality Assurance Project Plan
             (QAPP);

     3.    A Pump Test Plan, if necessary, for
         collection of aquifer Source Location
         information for use in pumping ell design;

     4.    a Remedial Design Contingency Plan;

     5.    a Treatability Study Work Plan which
         includes, at a minimum, plans and schedules
         for the preparation and submission of a
         Treatability Study Evaluation Report;

     6.    plans and schedules for the preparation and
         submission of a Preliminary Design
         Submittal (the preliminary design begins
         with the initial design and ends with the
         completion of approximately 30% of the
         design effort) containing, at a minimum:

         a.    a Design Criteria Report, including:

             1.    project description;

- 24 -

    2.    design requirements and
         provisions;

    3.    preliminary process flow
         diagrams;

    4.    operation & maintenance
         requirements;

b.    a Basis of Design Report, including:

    1.    justification of design
         assumptions;

    2.    a project delivery strategy;

    3.    remedial action permits plan for
         off-site permits;

    4.    preliminary easement/access
         requirements;

c.    Preliminary Drawings and
    Specifications, including:

    1.    outline of general
         specifications;

    2.    preliminary schematics and
         drawings;

    3.    chemical and geotechnical data
         (including data from pre-design
         activities);

- 25 -

    d.    a value engineering screen; and

    e.    preliminary Remedial Action schedule.

7.    plans and schedules for the preparation and submission of a pre-final design submittal which shall be submitted at approximately 90% of the design effort and shall address all of EPA's comments to the intermediate design, and, at a minimum, additionally include:

    a.    if determined by EPA to be necessary, a preliminary Operation & Maintenance Plan;

    b.    a preliminary Construction Quality Assurance Plan ("CQAP") (the CQAP, which shall detail the approach to quality assurance during construction activities at the Site, shall specify a quality assurance official ("QA Official"), independent of the Supervising Contractor, to conduct a quality assurance program during the construction phase of the project);

- 26 -

    c.    a preliminary Remedial Action decontamination plan;

    d.    a draft final Remedial Action schedule;

    e.    a draft final Remedial Action contingency plan; and

    f.    a draft final Remedial Action HASP for EPA acceptance.

8.    plans and schedules for the preparation and submission of a final design submittal which shall be submitted at 100% of the design effort and shall address all of EPA's comments to the pre-final design, and, at a minimum, additionally include:

    a.    a final Remedial Action schedule;

    b.    a final Remedial Action contingency plan;

    c.    a final Remedial Action HASP for EPA acceptance;

    d.    a final Remedial Action waste management plan;

    e.    a preliminary Remedial Action decontamination plan and a schedule

- 27 -

for the submission of the final

Remedial Action decontamination plan;

f.    a final Design Criteria Report;

g.    a final Remedial Action Sampling and

Analysis Plan (directed at measuring

progress towards meeting the

Performance Standards);

h.    a final Basis of Design Report;

i.    final Drawings and Specifications;

j.    a revised Operation & Maintenance Plan

and a schedule for submission of the

final Operation & Maintenance Plan, if

deemed necessary by EPA;

k.    a final Construction Quality Assurance

Plan;

l.    a final Remedial Action

decontamination plan; and

m.    a final project delivery strategy.

9.  a Remedial Design schedule.

c.  Upon approval of the Remedial Design Work Plan

by EPA, after a reasonable opportunity for review and comment

by the State, and submittal of the Health and Safety Plan for

all field activities to EPA and the State, Settling Defendant

- 28 -

shall implement the Remedial Design Work Plan in accordance

with the schedules and methodologies contained therein. The

Settling Defendant shall submit to EPA and the State all

plans, submittals, and other deliverables required under the

approved Remedial Design Work Plan in accordance with the

approved schedule therein for review and approval pursuant to

Section XI (EPA Approval of Plans and Other Submissions).

Unless otherwise directed by EPA, Settling Defendant shall not

commence further Remedial Design field activities at the Site

prior to approval of the Remedial Design Work Plan.

d. Upon approval, approval with conditions, or

modification by EPA, as provided in Section XI (EPA Approval

of Plans and Other Submissions), of all components of the

final design submittal, the final design submittal shall serve

as the Remedial Action Work Plan and shall be enforceable

under this Consent Decree. The Settling Defendant shall

implement the activities required under the Remedial Action

Work Plan in accordance with the schedules and methodologies

contained therein.

e. The Settling Defendant shall submit all plans,

submittals, or other deliverables required under the Remedial

Action Work Plan in accordance with the approved schedule for

review and approval pursuant to Section XI (EPA Approval of

- 29 -

Plans and Other Submissions).  Unless otherwise directed by

EPA or required under the Remedial Design Work Plan, the

Settling Defendant shall not commence physical activities at

the Site prior to the date for commencement set forth in the

approved schedule in the Remedial Action Work Plan.

    12.  Resident Engineer.  Following EPA approval, approval

with conditions, or modification by EPA, as provided in

Section XI (EPA Approval of Plans and Other Submissions), of

all components of the final design submittal, and prior to

commencement of any on-Site Work under the Remedial Action

Work Plan, the Settling Defendant shall submit to EPA the name

and qualifications of a Resident Engineer to be present at the

Site during construction to ensure that the Work is performed

in accordance with the approved Remedial Action Work Plan.

The Resident Engineer may be the same person as the

Supervising Contractor.  The Resident Engineer shall be

familiar with all aspects of the Remedial Design approved by

EPA.  EPA retains the right to disapprove the use of any

Resident Engineer proposed by Settling Defendant.  In the

event EPA disapproves the use of any proposed Resident

Engineer, Settling Defendant shall submit to EPA and the State

a list of at least two replacements, including the

qualifications of each, who would be acceptable to them within

twenty-one (21) days of receipt of EPA's notice.  EPA will
provide written notice of the names of any replacements whose
use it would accept.  Settling Defendant may select any
replacement from the EPA notice and shall notify EPA and the
State of the name of the replacement selected within ten (10)
days of EPA's written notice.  Settling Defendant shall ensure
that the Resident Engineer performs on-Site inspections as
necessary to ensure compliance with the approved Remedial
Action Work Plan and that the results of such inspections are
promptly provided to Settling Defendant, EPA, and the State.
The Resident Engineer may act as the QA Official.

13.  The Settling Defendant shall continue to implement
the Remedial Action and, if determined by EPA to be necessary,
O & M until the Performance Standards for the Source Location
are achieved and for so long thereafter as is otherwise
required under this Consent Decree.

14.  Modification of the Work.

a.  If EPA determines that modification of the Work
is necessary to achieve and maintain the Performance Standards
with respect to the Source Location or to carry out and
maintain the effectiveness of the remedy set forth in the ROD,
EPA may (1) require that such modification be incorporated
into the Remedial Design Work Plan, Remedial Action Work Plan,

- 31 -

Operation and Maintenance Plan, and/or any other plan relating to such Work, and/or (2) require that Settling Defendant submits a plan for EPA approval which incorporates such modification to the Work at the Source Location and implement such approved plan. EPA may require a modification pursuant to this Paragraph only to the extent that the modification is directed to Work that is conducted on or at the Source Location, and only to the extent that it is consistent with the scope of the remedy selected in the ROD. No modification shall make Settling Defendant jointly liable, or jointly obligated for the completion of the ROD as it pertains to the signatories to the Companion Consent Decrees or as it pertains to activities at the Site other than Work at or on the Source Location.

      b.   For the purposes of this Paragraph 14 and Paragraphs 50 and 51 only, and subject to the limitations in Paragraph 6, the "scope of the remedy selected in the ROD" means:

- tasks employing a technology or combination of technologies discussed in Section X [Selected Remedy and Performance Standards] of the ROD to achieve and maintain the objectives described in the ROD. The technologies discussed in Section X of the ROD include:
  - extraction of contaminated ground water;
  - treatment of the contaminated ground water via air-stripping;

- 32 -

- additional treatment of the liquid phase as necessary to meet discharge limits;
- discharge to surface water;
- treatment of the gas stream from the air stripper using granular activated carbon or ultraviolet oxidation; and
- hook-up of residences to public water as required by the ROD.

- tasks associated with monitoring of Operable Unit 3 conditions and the effectiveness of the Remedial Action.

c.    If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XIX (Dispute Resolution), Paragraph 68 (record review).  The Remedial Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or related work plans shall be modified in accordance with final resolution of the dispute.

d.    Settling Defendant shall implement any work required by any modifications incorporated in the Remedial Design Work Plan, Remedial Action Work Plan, Operation and Maintenance Plan, and/or in work plans developed in accordance with this Paragraph.

e.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

- 33 -

15.  Settling Defendant acknowledges and agree that nothing in this Consent Decree or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the Work Plans will achieve the Performance Standards.

16.  Settling Defendant shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed ten (10) cubic yards.

      a.  The Settling Defendant shall include in the written notification the following information, where available:

            1.   the name and location of the facility to which the Waste Material is to be shipped;

            2.   the type and quantity of the Waste Material to be shipped;

- 34 -

3.   the expected schedule for the shipment of the
     Waste Material; and

4.   the method of transportation.

The Settling Defendant shall notify the state in which the
planned receiving facility is located of major changes in the
shipment plan, such as a decision to ship the Waste Material
to another facility within the same state, or to a facility in
another state.

b.   The identity of the receiving facility and state
will be determined by the Settling Defendant following the
award of the contract for Remedial Action construction.   The
Settling Defendant shall provide the information required by
Paragraph 16.a as soon as practicable after the award of the
contract but in no case less than seven (7) days before the
Waste Material is actually shipped.

## VII.   REMEDY REVIEW

17.   Periodic Review.   Settling Defendant shall conduct any
studies and investigations of the Source Location as requested
by EPA, but only to the extent that such studies and
investigations are conducted and completed within the property
boundaries of the Source Location, in order to permit EPA to
conduct reviews of whether: (1) the Remedial Action is
protective of human health and the environment; and (2) the

Remedial Action meets or provides a basis for waiving ARARs
identified for the Remedial Action in the ROD (including
technical impracticability from an engineering perspective
pursuant to CERCLA Section 121(d)(4), 42 U.S.C. § 9621(d)(4)).
EPA shall conduct such reviews at least every five (5) years
as required by Section 121(c) of CERCLA and any applicable
regulations. EPA shall conduct studies and investigations, if
required by Section 121(c), at the following locations: the
Keystone Hydraulics Facility located at 834 West Third Street,
Lansdale Pennsylvania; the Royal Cleaners Facility located at
1315 North Broad Street, Hatfield, Pennsylvania; the Tate
Andale Facility located at 135 East Hancock Street, Lansdale,
Pennsylvania; the Westside Industries Facility located at 5th
and Mitchell Streets, Lansdale, Pennsylvania; the Electra
Products Facility located at 200 West 5th Street, Lansdale,
Pennsylvania; and the Facility located at 9th and Moyers,
Lansdale, Pennsylvania, and cause studies and investigations
to be conducted, if required by Section 121(c), at the
following locations: the John Evans and Sons Facility located
at Maple and Spring Avenues, Lansdale, Pennsylvania; the J.W.
Rex Facility, located at 8th Street and Valley Forge Road,
Lansdale, Pennsylvania; the Parker Hannifin Facility located
at  422 West Sixth Street, Lansdale, Pennsylvania; and the

Central Sprinkler Facility located at 451 North Cannon Avenue,
Lansdale, Pennsylvania, and conduct any sampling necessary to
determine whether: (1) the Remedial Action is protective of
human health and the environment; and (2) whether a waiver of
ARARs should be granted on the technical impracticability.

18.   EPA Selection of Further Response Actions.   If EPA
determines, at any time, that the Remedial Action is not
protective of human health and the environment, EPA may select
further response actions for the Site in accordance with the
requirements of CERCLA and the NCP.

19.   Opportunity To Comment.   Settling Defendant and, if
required by Sections 113(k)(2) or 117 of CERCLA, the public
will be provided with an opportunity to comment on any further
response actions proposed by EPA as a result of the review
conducted pursuant to Section 121(c) of CERCLA and to submit
written comments for the record during the comment period.

20.   Settling Defendant's Obligation To Perform Further
Response Actions.   If EPA selects further response actions for
OU3, it reserves its right to seek to have the Settling
Defendant undertake such further response actions.   Disputes
pertaining to whether the Remedial Action is protective or to
EPA's selection of further response actions shall be resolved
pursuant to Paragraph 68 (record review).